**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| NEIL F. LURIA, AS TRUSTEE TO THE TAYLOR BEAN & WHITAKER PLAN TRUST,<br><br>Plaintiff,<br><br>v.<br><br>PAUL H. WOLFF,<br><br>Defendant. | CV 15-09191-RSWL-GJSx<br><br>**ORDER** re Motion by Defendant Paul H. Wolff to Dismiss Complaint Under F.R.C.P. 12(b)(6), or, in the Alternative, F.R.C.P. 12(b)(1) [11] |

Currently before the Court is Defendant Paul H. Wolff's ("Defendant") Motion to Dismiss Complaint Under F.R.C.P. 12(b)(6), or, in the Alternative, F.R.C.P. 12(b)(1) [11] ("Motion" or "Motion to Dismiss"). Having reviewed all papers submitted pertaining to this Motion, the Court **NOW FINDS AND RULES AS FOLLOWS:** the Court **DENIES** Defendant's Motion [11].[1]

[1] Although a court "may take judicial notice of the *existence* of another court's opinion or of the filing of

# I. BACKGROUND

## A. <u>Factual Background</u>

Plaintiff Neil F. Luria ("Plaintiff" or "Plan Trustee") is a Florida citizen who is duly qualified and appointed as Plan Trustee of the Taylor Bean & Whitaker ("TBW") Plan Trust. Compl. ¶ 3, ECF No. 1.

Defendant is a California resident and at all relevant times was a Manager, the Chief Executive Officer ("CEO"), and an 80% owner of a corporation called 24/7 Call Capture ("24/7"). <u>Id.</u> at ¶ 4. 24/7 was a Delaware limited liability company with a principal place of business in California. <u>Id.</u> at ¶ 5. 24/7 was in the business of providing marketing services using telephone inquiry tracking technology. <u>See</u> <u>id.</u> at ¶ 6. Plaintiff alleges that in 2005, 24/7 and TBW agreed that TBW would provide a $200,000 capital contribution to 24/7 in exchange for a 20% profits ownership interest in 24/7; Defendant would be appointed Manager and CEO of 24/7 and would receive an

---

pleadings in related proceedings; the Court may not . . . accept as true the facts found or alleged in such documents." <u>Peel v. Brooks America Mortg. Corp.</u>, 788 F. Supp. 2d 1149, 1158 (C.D. Cal. June 1, 2011) (emphasis added); <u>see also</u> <u>Lee v. City of Los Angeles</u>, 250 F.3d 668, 690 (9th Cir. 2001). Accordingly, the Court **DENIES** Defendant's Request for Judicial Notice [11-1] as to the substance of the documents filed in filed in <u>In re Taylor Bean & Whitaker Mortgage Corp.</u>, No. 3:09-bk-07047-JAF, in the United States Bankruptcy Court for the Middle District of Florida. The Court **DENIES** Defendant's Request for Judicial Notice in Support of Reply [17-1] as to the substance of the Declaration of Donald A. Workman filed in <u>Luria v. 24/7 Call Capture, LLC</u>, No. 2:13-MC-0021-UA, in the United States District Court for the Central District of California.

80% profits interest in 24/7 with no capital contribution; and TBW would utilize and pay 24/7 for its services. Id. at ¶ 7.

Plaintiff alleges that 24/7 provided its services almost exclusively to TBW, and TBW paid 24/7 approximately $1,600,000 for services rendered. Id. at ¶ 7. Plaintiff also alleges that TBW paid all of 24/7's business and operating expenses, including Defendant's salary and bonuses. Id. at ¶ 8.

On about August 5, 2009, TBW gave notice to 24/7 that TBW was going out of business and was discontinuing use of 24/7's services. Id. at ¶ 9. At that time, the account payable owed by 24/7 to TBW was at least $3,757,138. Id. On August 24, 2009 and November 25, 2009, TBW and its subsidiaries filed Chapter 11 bankruptcy in the United States Bankruptcy Court for the Middle District of Florida. Id. at ¶ 10.

Plaintiff alleges that Defendant unlawfully caused 24/7 to make extraordinary transfers outside the ordinary course of business to himself or on his behalf during and after 2009 in an amount in excess of $2.1 million (collectively, the "Fraudulent Transfers"). Id. at ¶ 13. Included in the Fraudulent Transfers was a sum of $1,288,244.82, a portion of which was denominated as the "Event Payment" in Defendant's employment contract ("Contract") with 24/7. Id. at ¶ 14. The Contract provides, among other things, that upon the occurrence of a "Change Event," defined to

include any event which causes cessation of TBW's business with 24/7, 24/7 would pay Defendant a sum of money (the "Event Payment"). Id. at ¶ 14. Within days following TBW's notice to 24/7 that TBW would cease use of 24/7's services, Defendant caused 24/7 to pay him the Event Payment in the sum of $787,862.82. Id. at ¶ 15. Defendant also caused 24/7 to make additional "Tax Payments" in the amount of $500,382.00 to cover Defendant's income tax liability. Id.

Plaintiff alleges that when 24/7 made the Event Payment and Tax Payments to Defendant, 24/7 was insolvent. Id. at ¶ 16. Plaintiff alleges that 24/7 was left with $6,587 in its company bank account, despite owing substantial amounts to legitimate creditors, including TBW. Id.

Plaintiff also alleges that the Fraudulent Transfers include a $552,879 debt owed to 24/7 by an entity owned and controlled by Defendant, Uplead Technology, LLC ("Uplead"). Id. at ¶ 17. Plaintiff alleges that, in February 2014, Defendant caused 24/7 to forgive, release, and cancel Uplead's debt without any consideration. Id. at ¶¶ 17, 19. Plaintiff alleges that "Defendant received the full benefit of this forgiveness of debt owed by Uplead, a company which Defendant owned and controlled." Id. at ¶ 19.

As part of TBW's Chapter 11 plan, Plan Trustee filed two actions against 24/7 to avoid and recover both preferential and fraudulent transfers under 11

U.S.C. §§ 544, 547, 548, and 550, and Fla. Stat. §§ 726.105 and 726.106. Id. at ¶ 20. In November 2012, Defendant authorized entry of two separate Consent Judgments against 24/7 in the aggregate amount of $8,509,553.11. Id.

Plaintiff alleges that, shortly after directing 24/7 to stipulate to the Consent Judgments, Defendant took actions calculated and intended to impede and ultimately defeat Plaintiff's ability to enforce the Consent Judgments. Id. at ¶ 21.

In the Fall of 2014, Plaintiff moved the bankruptcy court for an order to examine Defendant as a person with knowledge relevant to the enforcement of the Consent Judgments. Id. at ¶ 25. The court ordered Defendant's examination, and Defendant was examined under oath on March 3, 2015. Id. at ¶ 29. Plaintiff alleges that, until Defendant's examination on March 3, 2015, Plaintiff had no knowledge, notice, or reason to suspect that Defendant had engaged in the Fraudulent Transfers. Id. at ¶ 24.

**B. Procedural Background**

On November 11, 2015, Plaintiff filed its Complaint [1]. Plaintiff alleges two causes of action against Defendant: (1) avoidance of fraudulent transfers pursuant to California Civil Code §§ 3439.04(a) and 3439.07; and (2) common law fraudulent conveyance pursuant to California Code of Civil Procedure § 338.

On January 19, 2016, Defendant filed the instant

Motion to Dismiss [11]. The matter was taken under submission on March 3, 2016 [19].

## II. DISCUSSION

### A. Legal Standard

A motion to dismiss tests whether the allegations in a complaint, if true, amount to an actionable claim. Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001). Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). The plaintiff must allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). In deciding whether the plaintiff has stated a claim, the Court must assume the plaintiff's allegations are true and draw all reasonable inferences in the plaintiff's favor. Usher v. City of Los Angeles, 828 F.2d 556, 561 (9th Cir. 1987).

A complaint may be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) if the facts and dates alleged demonstrate that the complaint is time-barred.[2]

---

[2] Defendant argues that his Motion is cognizable as a lack of the Court's subject matter jurisdiction under Rule 12(b)(1). Def.'s Mot. 11:16-20. Under Rule 12(b)(1), the court may review

Neveu v. City of Fresno, 329 F. Supp. 2d 1159, 1174 (E.D. Cal. 2005); Jablon v. Dean Witter & Co., 614 F.2d 677, 682 (9th Cir. 1980).

On a motion to dismiss, the Court may consider judicially noticeable evidence and "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading" without transforming a motion to dismiss into a motion for summary judgment.[3] Falcoccia v. Saxon Mortgage, Inc.,

---

evidence beyond the complaint without converting the Rule 12(b)(1) motion to dismiss into a motion for summary judgment. Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004). Ordinarily, statutes of limitations seek to prevent adjudication of stale claims, and are treated as ordinary affirmative defenses. Curen v. Fed. Crop Ins. Corp., 50 F. Supp. 3d 1200, 1209 (N.D. Cal. 2014). However, the Supreme Court has held that some statutes of limitation are "jurisdictional." Curen v. Fed. Crop Ins. Corp., 50 F. Supp. 3d 1200, 1207 (N.D. Cal. 2014). Here, the statute of limitations is not a condition to this Court's exercise of subject matter jurisdiction over the action. Accordingly, Federal Rule of Civil Procedure 12(b)(1) does not apply.

[3] If the Court considers matters outside the pleadings, the motion must be treated as one for summary judgment under Rule 56. Fed. R. Civ. P. 12(d); see In re American Cont'l Corp./Lincoln Sav. & Loan Sec. Litig., 102 F.3d 1524, 1537 (9th Cir. 1996), rev'd on other grounds sub nom Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach, 523 U.S. 26 (1998). On a motion for summary judgment, all parties shall be permitted to present material pertinent to the motion. Fed. R. Civ. P. 12(d); Jablon, 614 F.2d at 682. Here, Defendant did not properly raise a motion for summary judgment. See L.R. 56-1. Defendant also does not demonstrate that there is no dispute as to any material fact and Defendant should be entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Moreover, Plaintiff only addressed Defendant's Motion as one for dismissal for failure to state a claim and did not present material pertinent to a motion for summary judgment. Accordingly, the Court rules on Defendant's Motion pursuant to Rule 12(b)(6).

709 F. Supp. 2d 873, 876 (E.D. Cal. 2010); Branch v. Tunnell, 14 F.3d 449, 454 (9th Cir. 1994), overruled on other grounds by Galbraith v. Cnty. of Santa Clara, 307 F.3d 1119, 1124 (9th Cir. 2002).

**B. Discussion**

"A motion to dismiss based on the running of the statute of limitations period may be granted only 'if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove the statute was tolled.'" Centaur Class Convertible Arbitrage Fund Ltd. v. Countrywide Fin. Corp., 878 F. Supp. 2d 1009, 1014 (C.D. Cal. 2011) (citing Supermail Cargo, Inc. v. United States, 68 F.3d 1204, 1206-07 (9th Cir. 1995)).

1. Plaintiff's Claim for Avoidance of Fraudulent Transfers

California Civil Code § 3439.09(a) sets out the statute of limitations for a claim of fraudulent transfer. Section 3439.09(a) states:

> A cause of action with respect to a transfer or obligation under this chapter is extinguished unless action is brought . . . not later than four years after the transfer was made or the obligation was incurred or, if later, not later than one year after the transfer or obligation was or could reasonably have been discovered by the claimant.

Plaintiff's Complaint alleges that "[p]rior to on

or after March 3, 2015, Plan Trustee had no knowledge, notice or reason to suspect that Defendant had engaged in the Fraudulent Transfers which are the subject of this action." Compl. ¶ 24. Plaintiff further alleges that "Plan Trustee first received information disclosing the Fraudulent Transfers beginning on March 3, 2015 during the course of Defendant's sworn testimony concerning 247 Call Capture business records evidencing the Fraudulent Transfers, which Defendant first produced to Plan Trustee in late February 2015. This adversary proceeding has been commenced within one year of Plan Trustee's first acquiring knowledge or notice of the Fraudulent Transfers." Id. at ¶ 35.

Defendant argues that Plaintiff's claim is time barred because the statute of limitations began to run in June 2006 when the Contract was entered into, or at the latest in 2009 when the transfer actually occurred.

However, the United States Bankruptcy Appellate Panel of the Ninth Circuit has held in dicta that "the one-year period under Cal. Civ. Code § 3439.09(a)'s discovery rule does not commence until the plaintiff has reason to discover **the fraudulent nature of the transfer**." In re Ezra, 537 B.R. 924, 933 (B.A.P. 9th Cir. 2015) (emphasis in original). The Bankruptcy Appellate Panel noted that the California Supreme Court has not yet construed the discovery provision set forth in Cal. Civ. Code § 3439.09(a), and no published decisions have been issued from California Courts of

Appeal on the issue. Id. The Bankruptcy Appellate Panel reasoned that a contextual reading of the statutory text of the provision, common sense, and the purpose of the Uniform Fraudulent Transfer Act to provide relief to victims of fraudulent transfers all militate in favor of a liberal construction of the discovery rule to focus on the fraudulent nature of the transfer, and not mere discovery of the transfer itself. Id. In accordance with the reasoning of the Ninth Circuit Bankruptcy Appellate Panel, this Court finds that the one-year period under California Civil Code § 3439.09(a)'s discovery rule did not commence until Plaintiff had reason to discover the fraudulent nature of the transfer.[4]

Plaintiff alleges that it did not discover the fraudulent nature of the transfers until March 3, 2015. See Compl. ¶ 35. This action was filed within the one-

---

[4] Defendant's reliance on Kipperman v. Onex Corp., 411 B.R. 805 (N.D. Ga. 2009), In re Van Vleck, 211 B.R. 689 (Bankr. E.D. Mo. 1997), and In re Gibraltar Resources, Inc., 197 B.R. 246 (Bankr. N.D. Tex. 1996), is misplaced. Contrary to Defendant's assertion that the limitations period begins to accrue only when the obligation is incurred, the court in Kipperman notes that a plaintiff must show either a transfer made or an obligation incurred as the first element of a claim for fraudulent conveyance. 411 B.R. at 834. Similarly, the Missouri fraudulent transfer act at issue in Van Vleck is written in the disjunctive. See 211 B.R. at 693. Lastly, Gibraltar discusses the requirement under 11 U.S.C. § 547(b)(4)(A) that in order to prove a preference, the Trustee must prove that the pre-petition transfers were made "within 90 days before the date of the filing of the petition." 197 B.R. at 248. The court's holding in Gibraltar is expressly limited to application of the preference period, and Gibraltar is not applicable here. See id.

year limitations period, which did not commence until Plaintiff had reason to discover the fraudulent nature of the transfers. In re Ezra, 537 B.R. at 933. The assertions in Plaintiff's Complaint, read with the required liberality, permit Plaintiff to prove its claim. See Centaur, 878 F. Supp. 2d at 1014. Accordingly, the Court **DENIES** Defendant's Motion as to Plaintiff's first claim for avoidance of fraudulent transfers.

2. Plaintiff's Claim for Common Law Fraudulent Conveyance

California Code of Civil Procedure § 338 provides a three-year limitations period on a cause of action for common law fraudulent conveyance. See Cal. Code Civ. Proc. § 338(d). Pursuant to section 338(d), a cause of action for relief on the ground of fraud "is not deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting the fraud." Id.

As noted above, Plaintiff's cause of action for common law fraudulent conveyance did not begin to accrue until March 3, 2015, when Plaintiff alleges that it discovered the fraudulent nature of the transfers. Taking Plaintiff's allegations as true for purposes of this Motion, Plaintiff's Complaint is not time-barred. The Court **DENIES** Defendant's Motion as to Plaintiff's second cause of action for common law fraudulent conveyance.

/ / /

3. California's Statute of Repose

California Civil Code § 3439.09(c) provides: "Notwithstanding any other provision of law, a cause of action under this chapter with respect to a transfer or obligation is extinguished if no action is brought or levy made within seven years after the transfer was made or the obligation was incurred."

The statutory language is disjunctive, and encompasses both circumstances that could constitute a "fraudulent transfer." In some cases, an obligation undertaken could constitute a fraudulent transfer; and in other cases, the circumstances surrounding the actual transfer could support a claim for "fraudulent transfer." Here, Plaintiff's allegations encompass the latter situation. The "transfer was made" in 2009 when Defendant exercised his right to the Event Payment under the Contract. Thus, Plaintiff filed its lawsuit before the seven-year statute of repose expired.

4. Allegations Related to the Uplead Settlement

Defendant challenges the sufficiency of Plaintiff's allegations related to the Uplead Settlement. Def.'s Mot. 20:20-22. Defendant argues that Plaintiff cannot state a claim against Defendant because "Plaintiff does not claim that Wolff himself received any benefit for the forgiveness of the debt, but instead acknowledges Uplead received all of the purported benefit." Id. at 20:27-21:2.

However, Plaintiff alleges in its Complaint that

"included among the Fraudulent Transfers is the sum of $552,879, consisting of a debt due and owing to 24/7 Call Capture by another entity owned and controlled by Defendant known as Uplead Technology, LLC. [. . . ] Defendant caused 24/7 Call Capture to forgive, release, and cancel the debt owing to 24/7 Call Capture by Uplead without any consideration to 24/7 Call Capture or other business justification." Compl. ¶ 17. Plaintiff alleges that Defendant was the 80% owner and CEO of both 24/7 and Uplead. Id. at ¶ 18. Plaintiff also alleges that Defendant executed the settlement between Uplead and 24/7 on behalf of both counter-parties in his capacity as CEO and majority owner of both 24/7 and Uplead, and the effect of the settlement was to cancel a debt owed by Uplead to 24/7. Id. at ¶ 19. Plaintiff explicitly alleges that "Defendant received the full benefit of this forgiveness of a debt owed by Uplead, a company which Defendant owned and controlled." Id.

These allegations are sufficient to allege that Defendant received a benefit for the forgiveness of Uplead's debt.[5] The question presented by a motion to dismiss is not whether Plaintiff will prevail in the action, but whether Plaintiff is entitled to offer evidence in support of its claim. Swierkiewicz v.

---

[5] Defendant submits the Wolff Declaration, in which Wolff declares that he received no monies from the settlement. Wolff Decl. ¶ 7. The Court does not consider the Wolff Declaration in ruling on this Motion to Dismiss.

Sorema N.A., 534 U.S. 506, 511 (2002). Plaintiff is entitled to offer evidence in support of its fraudulent transfer claims.

5. Reasonable Equivalent Value in Exchange for the Transfer

Defendant's final argument asserts that Plaintiff implicitly acknowledges that 24/7 "received reasonably equivalent value" for the Event Payment because Plaintiff's Complaint only challenges the Event Payment as a fraudulent transfer, but does not seek to set aside the original Contract that provided for the Event Payment. Def.'s Mot. 21:15-23. However, the fact that the Contract itself is not fraudulent or avoidable does not preclude Plaintiff's claims for fraudulent transfer.

## III. CONCLUSION

For these reasons, the Court **DENIES** Defendant's Motion to Dismiss [11].

**IT IS SO ORDERED.**

DATED: April 11, 2016

s/ RONALD S.W. LEW

**HONORABLE RONALD S.W. LEW**
Senior U.S. District Judge